The Home Insurance Company ("The Home") appeals from the entry of a partial summary judgment, made final pursuant to Rule 54(b), Ala.R.Civ.P., in favor of its insured, Arthur M. Rice, in Rice's action against The Home to compel it to defend him in two lawsuits[1] filed against him.
The Home issued to Rice a "claims made" errors and omissions insurance policy that The Home contends covered only *Page 860 
Rice's actions as a real estate agent or broker. This policy was in effect from October 9, 1984, through October 9, 1985. Actions were filed against Rice by Ernest Ross and George Miller on February 7, 1985, and April 9, 1985, respectively, stating claims that arose out of Rice's activities in connection with a retirement community in Birmingham, Alabama.
Upon receiving each complaint, Rice immediately notified W. Marshall Cullifer, The Home's local agent from whom Rice had purchased his policy. Cullifer, in turn, immediately forwarded a copy of each complaint to The Home. In each initial letter to The Home notifying it of a lawsuit, Cullifer relayed the same information. The following is the entire letter from Cullifer to The Home dated April 2, 1985:
 "Please see enclosed letter dated March 22, 1985 from the insured and suit papers attached thereto re Ernest Ross . . . vs Bank South, N.A., Et Al, and respond on behalf of the insured within time limit allowed by the court. Note that insured has retained an attorney to answer and defend this suit. Please contact the insured and/or his attorney and advise re his questions pertaining to payment of fees, procedures, etc. Please keep us informed."
(Emphasis added.) The Home acknowledged receipt of, and assigned a file number for, the Ross and Miller claims on April 22, 1985, and April 29, 1985, respectively. Following each of these acknowledgments, specifically, on April 24, 1985, and May 8, 1985, The Home contacted John Grenier, of the Birmingham law firm of Lange, Simpson, Robinson Somerville, whom Rice had previously contacted regarding defending him in the Ross and Miller actions. In two substantively identical, successive letters to Mr. Grenier, the first referring to the Ross action and the second referring to the Miller action, The Home wrote the following:
 "This will confirm our agreement of recent date to retain your firm to represent the interests of our above named Insured [Arthur M. Rice]. We have established the above claim number for the referenced claim. Please note this number on your file and include this number on all correspondence
with this company regarding this claim."
 "Enclosed is a copy of our file guidelines. Please review these guidelines and advise us immediately of any difficulties in complying with them."
 "We look forward to receiving your initial report and evaluation within the next 30 days."
 "Thank you in advance for your anticipated courtesy and cooperation."
These two letters, by which The Home retained Mr. Grenier to represent Rice in the Ross and Miller actions, did not contain any reservation of The Home's right to deny an obligation to defend Rice.
During the course of the next several months, Mr. Grenier and his firm sent The Home several items of correspondence, including a status report on the consolidated Ross/Miller actions and periodic invoices for costs and legal services rendered in Rice's defense. It was not until approximately 13 months after The Home had retained Mr. Grenier that an Atlanta law firm retained by The Home notified Mr. Grenier that The Home had "declined" coverage for Rice and refused to provide for his defense in the Ross/Miller actions. Rice filed this action against The Home, contending that The Home was contractually obligated to defend the Ross/Miller actions, or, alternatively, that The Home was obligated, by the theories of waiver and estoppel, to provide Rice's defense. Following the trial court's entry of summary judgment in favor of Rice, The Home now appeals to this Court.
Initially, we address The Home's contention that the trial court's summary judgment in favor of Rice, "though specifically requiring The Home to pay attorney's fees incurred by Rice in a defense of the Ross and Miller actions, in effect creates coverage by estoppel in contravention of Alabama law." Upon a thorough review of the record, including Rice's motion for partial *Page 861 
summary judgment and the trial court's order granting that motion, we find no merit in The Home's contention that the trial court has created coverage by estoppel. Rice's motion specifically sought only a summary judgment on the issue of The Home's duty to defend Rice, and the trial court's order from which The Home now appeals holds only that Rice was entitled to a judgment on the issue of The Home's duty to defend. There has been no ruling by the trial court that in any way affects The Home's duty to provide coverage for the claims asserted against Rice. "It is well established [in this state] that the insurer's duty to defend is more extensive than its duty to pay." Burnham Shoes, Inc. v. West American Ins. Co.,504 So.2d 238 (Ala. 1987), quoting Ladner Co. v. Southern Guaranty Ins.Co., 347 So.2d 100 (Ala. 1977).
Having confined our opinion to the question of The Home's duty to defend, we now consider whether the summary judgment was proper in this case.
 "In Campbell Piping Contractors, Inc. v. Hess Pipeline Co., 342 So.2d 766 (Ala. 1977), this Court adopted the general rule with respect to the right of an insurer to withdraw a defense already undertaken without a reservation of the right to question at a later time its obligation to defend under the contract:
 " 'The doctrine of estoppel is said to be founded upon principles of equity, morality and justice. 31 C.J.S. Estoppel § 1. When a liability insurer, by assuming the defense of an action, leads one to believe liability to do so is not denied, it would be unfair to subsequently permit that insurer to deny coverage, when, without reservation and with knowledge, it assumes exclusive control of the defense of an action. See 38 A.L.R.2d 1148, § 5[b], citing Security Ins. Co. v. Jay, 109 F. Supp. 87 (D.C.Minn. 1952); Lincoln Park Arms Bldg. Corp. v. U.S.F. G. Co., 287 Ill. App. 520, 5 N.E.2d 773
(1936); General Tire Co. v. Standard Acci. Ins. Co., 65 F.2d 237 (CA 8th Minn. 1933). The general rule is limited by the principle that the insurer may avoid the operation of the rule by giving notice that the assumption of the defense is not a waiver of its right to deny coverage.' "
Burnham Shoes, 504 So.2d 238, 241. This general rule was also reiterated in Shelby Steel Fabricators v. United StatesFidelity Guaranty Ins. Co., 569 So.2d 309 (Ala. 1990).
When The Home retained Mr. Grenier to defend Rice in theRoss action, it had the complaint in Ross before it. Likewise, when The Home sent Mr. Grenier a letter retaining him to defend Rice in the Miller action it had the Miller complaint before it. The complaints in Ross and Miller, which set forth the claims and allegations against Rice, contained facts sufficient to put The Home on notice of any potential problem with coverage under its insurance contract with Rice. The Home having knowledge of the substance of those claims against Rice, it was incumbent upon The Home to preserve its rights by giving notice that its assumption of Rice's defense was not a waiver of its right to deny a duty to defend. Having failed to do so, The Home certainly led Rice to believe that its liability to provide a defense was not denied. It would be unfair to allow The Home to deny a duty to provide Rice's defense 13 months after it had assumed that defense. Campbell Piping Contractors,Inc. v. Hess Pipeline Co., 342 So.2d 766 (Ala. 1977); BurnhamShoes, supra.
Nevertheless, The Home argues that proof of actual prejudice to the insured is required before an insurance company that failed to reserve its right to deny a duty to defend is estopped to deny that duty. However, neither Campbell, supra, nor Burnham Shoes, supra, requires the insured to demonstrate actual prejudice in a duty-to-defend action. See generally Integrity Insurance Co. v. King Kutter, Inc., 866 F.2d 408
(11th Cir. 1989).
The Home also challenges the trial court's refusal to allow it to depose Rice and his attorneys regarding communications that occurred between them or with Home representatives concerning the availability *Page 862 
of insurance coverage for the claims asserted in the Ross/Miller actions.
It is well settled that discovery matters are within the discretion of the trial court. Ex Parte Fielder, 528 So.2d 325
(Ala. 1988). We will not reverse the trial court's rulings on discovery issues unless there has been a clear abuse of discretion. Id. We find nothing in the record to indicate that the trial court abused its discretion in refusing to allow The Home to depose Rice and his attorneys regarding Rice's understanding, based on his discussions with his attorney, of the coverage for the claims. The Home's waiver of its right to deny a duty to defend occurred through its own conduct; it was not dependent on Rice's alleged suspicion of a coverage dispute. Therefore, the trial court did not abuse its discretion in refusing to allow The Home's requested discovery.
Based on the above, we affirm the trial court's summary judgment in favor of Rice. We note that the trial court reserved for a later hearing the question of the amount of attorney fees and costs to be awarded.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] The two underlying lawsuits were consolidated in the United States District Court for the Northern District of Alabama asErnest Ross and George Miller v. Arthur M. Rice, et al., No. 85-PT-0444-S and 85-PT-1044-S. On August 19, 1986, the federal district court granted Rice's motion for summary judgment in those consolidated cases. That decision was affirmed in Ross v.Bank South, N.A., 885 F.2d 723 (11th Cir. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990). At the time of this appeal, only the state law claims in that action are pending, and they are now pending in the Jefferson County, Alabama, Circuit Court.